**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MOHAMMAD JAVAD HAJJAR-NEJAD,

    Plaintiff,

    v.

GEORGE WASHINGTON UNIVERSITY,

    Defendant.

Civil Action No. 10-00626 (CKK)

**MEMORANDUM OPINION AND ORDER**
(January 4, 2012)

Plaintiff Mohammad Javad Hajjar-Nejad ("Hajjar-Nejad") brings this action against The George Washington University ("GW"), principally challenging his dismissal as a medical student from GW's School of Medicine and Health Sciences (the "Medical School") in July 2007.  In the short time that the action has been pending, Hajjar-Nejad has already amended his complaint twice; he now seeks to do so for a third time through his pending [33] Motion for Leave to File Third Amended Complaint ("Motion to Amend").  Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, Hajjar-Nejad's [33] Motion to Amend shall be GRANTED-IN-PART and DENIED-IN-PART.

## I.  BACKGROUND

The Court shall begin by briefly setting forth the factual background for this action, relying on the factual allegations in Hajjar-Nejad's Second Amended Complaint; the Court shall set forth the factual allegations relevant to Hajjar-Nejad's proposed Third Amended Complaint primarily when discussing the merits of his Motion to Amend.  *See infra* Part III.  In this section, after setting forth the pertinent factual background, the Court shall recite the procedural history of the case.

A.      *Factual Background*

While an undergraduate at GW, Hajjar-Nejad applied to GW's Medical School.  Second

Am. Compl., ECF No. [20], ¶ 9.  On November 5, 2003, the Medical School presented Hajjar-

Nejad with a written Offer of Acceptance offering him "admission to the Doctor of Medicine

degree program" upon certain terms and conditions, and Hajjar-Nejad executed the document

two days later, thereby "accept[ing] the conditional offer of acceptance" for the academic year

beginning in 2004.  *See id.* Ex. 1 (Offer of Acceptance) at 1.

The Offer of Acceptance identifies several terms and conditions to GW's offer.  *See id.*

Among other things, Hajjar-Nejad was required to submit additional application materials,

complete his undergraduate studies with a satisfactory level of performance, demonstrate his

financial ability to pay tuition and related expenses, and provide a deposit and a tuition

prepayment.  *Id.*  Of particular relevance to this action, the Offer of Acceptance includes the

following paragraph:

> I understand that the submission of false or misleading information
> or material omission in connection with the application process shall
> be grounds for withdrawing my conditional offer of acceptance to
> [the Medical School].  I further understand and agree that if any such
> submissions or omissions are discovered after matriculation in the
> Doctor of Medicine degree program or award of a degree, [the
> Medical School] has the right, in its sole discretion, to dismiss me
> from [the Medical School] and/or revoke my degree.

*Id.*  Outside this narrow context, the Offer of Acceptance does not, on its face, purport to describe

the circumstances under which Hajjar-Nejad could be dismissed from the Medical School or the

scope of GW's discretion in determining when dismissal would be appropriate.  Nor, for that

matter, does it purport to describe whether Hajjar-Nejad had any continuing right to attend the

Medical School.

Hajjar-Nejad began his studies at GW's Medical School in 2004.  He was a "superb" student and "excell[ed]" in his first two years.  *Id.* ¶ 14.  In April 2006, he was accepted into an honors program for third-year students by a committee of nine faculty members based on its consideration of a written essay, project proposal, mentorship, prior achievements, and strength of academic performance.  *Id.* ¶ 15.  Hajjar-Nejad participated in the honors program through August 11, 2006.

During this period, Hajjar-Nejad reported to various individuals his "good faith observations" that included, among other things, "limited criticisms of hospital practices."  *Id.* ¶ 19.  Around this same time period, Hajjar-Nejad began to be subjected to "adverse and unwarranted comments" from faculty and students.  *Id.*  For example, on August 23, 2006, Senior Associate Dean W. Scott Schroth, M.D. ("Schroth") reported to other senior faculty that Hajjar-Nejad had "leveled criticisms" against them.  *Id.* ¶ 20.  According to Hajjar-Nejad, this act of reporting marked the beginning of a "pattern of hostility and antagonism" against him.  *Id.*

In his third year, Hajjar-Nejad began to experience "increasingly hostile treatment" from the Medical School's faculty, and in particular James L. Scott, M.D. ("Scott"), the Dean of the Medical School.  *Id.* ¶ 21.  On October 23, 2006, Schroth, acting under Scott's direction, informed Hajjar-Nejad that he "would have to leave" the honors program and that, if he did not do so voluntarily, he would be "removed."  *Id.* ¶ 26.  At a meeting with Medical School faculty, Hajjar-Nejad stated that he believed there was no legitimate basis for the hostile treatment.  *Id.* ¶ 29.  Ultimately, however, Hajjar-Nejad left the honors program.  *Id.* ¶ 31.

Nonetheless, according to Hajjar-Nejad, his mistreatment continued unabated.  *Id.* ¶ 32.  In February 2007, he learned that the Subcommittee on Professional Comportment (the

"Subcommittee") within the Medical Student Evaluation Committee (the "MSEC") was evaluating his academic progress. *Id.* ¶ 33. Hajjar-Nejad characterizes the outcome of this process as "pre-determined." *Id.* On May 3, 2007, Hajjar-Nejad attended a Subcommittee meeting accompanied by legal counsel. *Id.* ¶ 34. He contends that the meeting was conducted in violation of GW's policies and regulations. *Id.* He further contends that he was not permitted to ask questions, cross-examine witnesses, or to present witnesses or evidence of his own. *Id.*

Despite the allegedly hostile treatment, Hajjar-Nejad managed to complete the 2006-2007 academic year with passing grades and positive evaluations from his professors. *Id.* ¶ 35. But on June 18, 2007, the Subcommittee issued its recommendations to the MSEC. *Id.* ¶ 37. The contents of those recommendations are not entirely clear, though Hajjar-Nejad contends that the recommendations were contrary to GW's "regulations and policies." *Id.*

On June 18, 2007, the MSEC, chaired by Jeffrey S. Ackman, M.D., held a meeting concerning Hajjar-Nejad. *Id.* ¶¶ 38-40. Hajjar-Nejad was accompanied by counsel but was denied leave to bring an expert witness or legal assistant. *Id.* ¶ 39. He did not receive a copy of the Subcommittee's recommendations until early that morning. *Id.* ¶ 38. Hajjar-Nejad claims that the MSEC was comprised "primarily of white students" and individuals "pre-selected" by GW. *Id.* ¶ 40. He contends that, contrary to the Medical School's "regulations," the MSEC did not issue written recommendations despite his requests. *Id.* ¶ 41.

On July 26, 2007, Hajjar-Nejad received a letter, dated two weeks earlier, stating that the MSEC had recommended his dismissal. *Id.* ¶ 42. The letter indicates that the MSEC held meetings on June 18, 2007, and July 9, 2007, to conduct their deliberations, and that in doing so they "review[ed] the relevant aspects of the 'Regulations for MD Candidates.'" Ltr. from J.

4

Akman, M.D., to J. Scott, M.D., dated July 12, 2007, ECF No. [21-3], at 1.[1]  The letter goes on to

provide as follows:

> A motion was made and seconded to accept the Professional
> Comportment Subcommittee's report and recommendations. Serious
> concerns were raised about Mr. Hajjar-Nejad's professionalism,
> honesty and integrity, his interpersonal relationships and his capacity
> to work with others.  Of particular concern[] were the following: Mr.
> Hajjar-Nejad's inability to accept responsibility for his own actions;
> refusal to accept instructions or constructive feedback from residents,
> faculty and deans; inability to work and communicate effectively with
> peers and residents; inadequate understanding of the commitment to
> and responsibility for patient care; lack of insight into personal
> weaknesses and areas for improvement; and, inappropriate
> understanding of the role of a medical student in the medical
> education hierarchy.  In addition, the Committee noted that these
> concerns were not the result of an isolated incident, but appeared to
> be a pattern in most interactions with Mr. Hajjar-Nejad.

*Id.* at 2.  The letter states that a "motion for dismissal" passed in a "secret ballot vote" with nine

votes in favor, none against, and one abstention.  *Id.*

Hajjar-Nejad claims that the dismissal determination was unjustified and contrary to

policies and regulations to which GW was "obliged to adhere."  Second Am. Compl. ¶ 43.  He

contends that the MSEC "exceeded the scope of its authority" and committed a number of

"procedural violations" in connection with the dismissal proceedings.  *Id.*

On July 26, 2007, Scott adopted the MSEC's recommendation and dismissed Hajjar-

Nejad from the Medical School.  *Id.* ¶ 45.  Hajjar-Nejad claims that this was improper because

GW's regulations required the final decision to be made by the Vice President of Academic

Affairs.  *Id.*  Subsequently, Hajjar-Nejad sought to appeal the determination within GW and the

determination was ultimately upheld.  *Id.* ¶¶ 47, 49.

---

[1]  The letter is incorporated in the Second Amended Complaint.

Hajjar-Nejad claims that the alleged campaign of mistreatment continued even after his dismissal from the Medical School.  In particular, he contends that GW put an "unlawful and retaliatory 'hold'" on his academic transcripts for a period of eight months to "preclude his subsequent transfer to an alternative medical school" and prevented him from sitting for a national exam to become a physician.  *Id.* ¶¶ 51-52.

### B.    *Procedural Background*

Despite the relatively recent vintage of this action, its procedural history is extensive. Hajjar-Nejad originally commenced the action *pro se* in the United States District Court for the District of Maryland—on April 9, 2010.  *See* Compl., ECF No. [1-4].  By any reasonable measure, Hajjar-Nejad's original Complaint was sprawling; it spanned 121 color-coded pages, included 193 paragraphs (several with discrete sub-parts), and was accompanied by thousands of pages of exhibits.  Although far from clear, Hajjar-Nejad appeared to allege that he was unfairly and unlawfully dismissed from GW based on his race, religion, and perceived national origin[2] in violation of Title VI of Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"); Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the District of Columbia Human Rights Act, D.C. CODE § 2-1401.01 *et seq.* (the "DCHRA"); and his constitutional rights to free speech, the free exercise of religion, and equal protection under the law.

On April 19, 2010, the action was transferred to this Court, *see* Mem. (Apr. 19, 2010), ECF No. [1-10], whereupon Hajjar-Nejad secured legal counsel and, with GW's consent, filed an Amended Complaint (the "First Amended Complaint"), *see* Am. Compl., ECF No. [13].  The

---

[2]  Hajjar-Nejad identifies his race as Arabic or Middle Eastern; his religion as Muslim; and his perceived national origin as Iranian.

First Amended Complaint—itself no model of clarity—included three counts.  In Count I, Hajjar-Nejad appeared to claim that GW discriminated against him on the basis of his race, religion, and national origin in violation of Title VII; Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and the DCHRA.[3]  *See id.* ¶¶ 72-75.  In Count II, Hajjar-Nejad appeared to claim that GW retaliated against him for engaging in protected activity in violation of Title VII; Section 1981; and the DCHRA.  *See id.* ¶¶ 77-79.  In Count III, Hajjar-Nejad alleged that GW breached the terms of the Offer of Acceptance by dismissing him from the Medical School.  *See id.* ¶¶ 81-83.

On July 26, 2010, GW filed its first Motion to Dismiss, targeted at Hajjar-Nejad's First Amended Complaint.  *See* Def.'s Mot. to Dismiss First Am. Compl., ECF No. [14].  On August 20, 2010, Hajjar-Nejad, then acting through counsel, responded by filing a partial opposition and voluntarily dismissing what he referred to as his "civil rights claims"—*i.e.*, Counts I and II of the First Amended Complaint—without prejudice.  *See* Pl.'s Partial Opp'n to Def.'s Mot. to Dismiss First Am. Compl. and Voluntary Dismissal of All Pending Civil Rights Claims, ECF No. [17].  By way of explanation, Hajjar-Nejad averred that some or all of his claims were still pending before the District of Columbia Commission on Human Rights and therefore were yet to be fully exhausted.  *See id.* at 3-4.  Concurrently, Hajjar-Nejad moved this Court for leave to file a Second Amended Complaint omitting his "civil rights claims" but retaining his claim for breach of contract, *see* Pl.'s Mot. for Leave to File Second Am. Compl., ECF No. [18], which the Court granted, *see* Order (Aug. 24, 2010), ECF No. [19].

---

[3]  The precise legal theories upon which Hajjar-Nejad intended to rely are not clear from the face of his First Amended Complaint.

On August 24, 2010, Hajjar-Nejad filed his Second Amended Complaint.  *See* Second Am. Compl., ECF No. [20].  Despite the sweep of its allegations, Hajjar-Nejad's Second Amended Complaint asserts a single cause of action sounding in breach of contract.  *See id.* ¶¶ 58-60.  Specifically, Hajjar-Nejad's Second Amended Complaint contends that the Offer of Acceptance constitutes a binding contractual agreement and that GW breached the agreement by dismissing him from the Medical School.  *See id.*

On September 17, 2010, GW filed its second Motion to Dismiss, this one targeted at Hajjar-Nejad's Second Amended Complaint.  *See* Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss Pl.'s Second Am. Compl., ECF No. [21-1].  Hajjar-Nejad, again through his chosen legal counsel, opposed GW's second Motion to Dismiss.  *See* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss Second Am. Compl., ECF No. [22].  Long after the motion was fully briefed, however, Hajjar-Nejad filed his second Motion to Amend, seeking to add claims arising under Title VI, Title VII and Section 1981.  *See* Pl.'s Mem. in Supp. of Pl.'s Mot. to Reinsert Civil Rights Compls., ECF No. [24].

Even though Hajjar-Nejad was represented by counsel of record at the time, he filed his second Motion to Amend *pro se*.  This prompted his legal counsel to file a Motion to Withdraw.  *See* Mot. for Leave to Withdraw as Pl.'s Counsel of Record, ECF No. [25].  Therein, Hajjar-Nejad's counsel represented that "[s]everal disagreements ha[d] arisen" between him and Hajjar-Nejad "with respect to the management of this case," *id.* at 1, and claimed that Hajjar-Nejad filed his Motion to Amend with the Clerk of the Court without his prior review or approval, *id.* at 2.

On August 15, 2011, this Court issued a detailed Memorandum Opinion and Order resolving GW's second Motion to Dismiss, Hajjar-Nejad's second Motion to Amend, and Hajjar-

Nejad's counsel's Motion to Withdraw.  *See Hajjar-Nejad v. George Wash. Univ.*, __ F. Supp.

2d __, 2011 WL 3557312 (D.D.C. Aug. 15, 2011).  Beginning with GW's Motion to Dismiss,

the Court first noted that Hajjar-Nejad, through his chosen counsel, had voluntarily narrowed the

scope of his Second Amended Complaint to assert a single claim sounding in breach of

contract—specifically, his claim that the written Offer of Acceptance constitutes a binding

agreement between him and GW and that GW breached the terms of that agreement by

dismissing him from the Medical School and refusing to provide him with the contemplated

educational services.  From there, the Court proceeded to find that the Second Amended

Complaint was "deficient in important respects."  *Id.* at *8.  Most notably, in the Second

Amended Complaint, Hajjar-Nejad periodically referred to "regulations," "policies," "rules,"

"procedures," and "directives" that GW allegedly contravened during the course of the parties'

three-year relationship.  However, Hajjar-Nejad's allegations with respect to those "regulations"

and "policies" were conclusory and failed to provide sufficient factual content that would allow

the Court to conclude "(i) that these 'regulations' and 'policies' constituted a valid contract

between Hajjar-Nejad and GW; (ii) that they imposed specific obligations or duties on GW; and

(iii) that GW breached those specific obligations or duties."  *Id.*  Although Hajjar-Nejad had

identified five sets of "regulations" or "policies" that he contended GW violated,[4] the

Court—citing the well-established principle that a party cannot amend its pleadings by its briefs

in opposition to a dispositive motion—found that Hajjar-Nejad's "belated identification of these

---

[4]  The fives sets of "regulations" or "policies" included: "(1) the Medical School's
Student Mistreatment Policies and Procedures; (2) GW's Non-Retaliation Policy; (3) GW's
Regulations for M.D. Candidates; (4) GW's Guide to Student Rights and Responsibilities; and
(5) GW's Disruption of University Functions Policy."  *Hajjar-Nejad*, 2011 WL 3557312, at *8.

documents in his opposition papers [did not] cure the fundamental defects in his Second

Amended Complaint." *Id.* In short, "Hajjar-Nejad's Second Amended Complaint fail[ed] to

provide adequate notice of his breach of contract claim to the extent he intend[ed] to base it on an

unidentified universe of 'regulations,' 'policies,' 'rules,' 'procedures,' and 'directives.'" *Id.*

Moreover, in resolving GW's second Motion to Dismiss, the Court underscored that "Hajjar-

Nejad's claim for breach of contract, as it is framed in the Second Amended Complaint, is based

on one, and only one, alleged breach—namely, that GW allegedly 'rescinded the contract to

provide educational services to [Hajjar-Nejad] through its precipitous and unlawful dismissal of

[him]." *Id.* (quoting Second Am. Compl. ¶ 59).  Indeed, in his opposition to GW's second

Motion to Dismiss, Hajjar-Nejad "confirm[ed] this and expressly disclaim[ed] that he [was]

alleging that anything outside of the ultimate contract termination constituted separate actionable

breaches." *Id.* (quotation marks and citation omitted).

Nonetheless, the Court could not "conclude that Hajjar-Nejad had "completely failed to

state a claim for breach of contract." *Id.* at *9.  Hajjar-Nejad had incorporated the Offer of

Acceptance into the Second Amended Complaint, specifically alleged that it constituted a

mutually binding agreement supported by consideration on both sides, maintained that GW

breached the Offer of Acceptance by dismissing Hajjar-Nejad from the Medical School, and

averred that he had suffered damages as a result of the alleged breach.  Noting that GW had

"never argue[d] that the Offer of Acceptance does not—as a matter of law—impose any

obligations on GW that would preclude it from dismissing Hajjar-Nejad [from the Medical

School] under the facts alleged," the Court concluded that "Hajjar-Nejad ha[d] stated sufficient

facts to provide GW with 'fair notice' of a claim that GW breached the Offer of Acceptance by

dismissing Hajjar-Nejad from the Medical School in July 2007." *Id.* at *10.  Only that narrow

claim survived GW's second Motion to Dismiss.

After resolving GW's second Motion to Dismiss in its August 15, 2011 Memorandum

Opinion and Order, the Court turned to Hajjar-Nejad's second Motion to Amend, through which

he sought to reintroduce claims arising under Title VI, Title VII, and Section 1981.  Briefly

stated, the Court found that Hajjar-Nejad's second Motion to Amend, which he had filed *pro se*

despite being represented by counsel of record, was procedurally defective because he had failed

to comply with the meet-and-confer requirements imposed by Local Civil Rule 7(m) and had

further failed to provide a proposed amended pleading as required by Local Civil Rules 7(i) and

15.1.  *See id.* at *11.  For these reasons, the Court denied Hajjar-Nejad's second Motion to

Amend, advising Hajjar-Nejad that, "[t]o the extent [he] intend[ed] to move this Court for leave

to amend his complaint, he must include with his motion to amend a proposed pleading

identifying each [and] every claim he intends to pursue in this action and a short and plain

statement of the factual basis for those claims." *Id.*

Finally, in its August 15, 2011 Memorandum Opinion and Order, the Court granted

Hajjar-Nejad's counsel's Motion to Withdraw, which Hajjar-Nejad had not opposed.  *See id.* at

*12.  Although Hajjar-Nejad has since been afforded an opportunity to secure alternate legal

counsel, he has elected to proceed in this action *pro se*.[5]

On September 7, 2011, over three weeks after the Court resolved GW's second Motion to

Dismiss and Hajjar-Nejad's second Motion to Amend, Hajjar-Nejad filed the pending Motion to

---

[5]  Although proceeding *pro se*, Hajjar-Nejad repeatedly represents that he has consulted
with attorneys in crafting his proposed Third Amended Complaint.

Amend—his third.  *See* Pl.'s Mot. for Leave to File Third Am. Compl. ("Pl.'s Mem."), ECF No.

[33].  Hajjar-Nejad's proposed Third Amended Complaint is, like his original Complaint,

sprawling; it spans 67 pages, includes hundreds of paragraphs (several unnumbered), and is

accompanied by 19 separate exhibits.  *See* Proposed Third Am. Compl., ECF No. [33-2].  On

September 26, 2011, GW filed an opposition.  *See* Def.'s Opp'n to Hajjar-Nejad's Mot. to File

Third Am. Compl. ("Def.'s Opp'n"), ECF No. [36].  On September 29, 2011, Hajjar-Nejad file a

reply.  *See* Pl.'s Reply Mem. to Def.'s Opp'n to Mot. for Leave to File a Third Am. Compl.

("Pl.'s Reply"), ECF No. [40].  As a result, Hajjar-Nejad's third Motion to Amend is now fully

briefed and ripe for a decision.  In an exercise of its discretion, the Court finds that holding oral

argument on the motion would not assist the Court in rendering its decision.  *See* LCvR 7(f).

## II.  LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, a party may amend its pleadings once as a

matter of course within a prescribed time period.  *See* FED. R. CIV. P. 15(a)(1).  When a party

seeks to amend its pleadings outside that time period or for a second time, it may do so only with

the opposing party's written consent or the district court's leave.  *See* FED. R. CIV. P. 15(a)(2).

The decision whether to grant leave to amend a complaint is entrusted to the sound discretion of

the district court, but leave "should be freely given unless there is a good reason, such as futility,

to the contrary."  *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996),

*cert. denied*, 520 U.S. 1197 (1997).  As the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may
> be a proper subject of relief, he ought to be afforded an opportunity
> to test his claim on the merits.  In the absence of any apparent or
> declared reason—such as undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing

12

> party by virtue of allowance of the amendment, futility of
> amendment, etc.—the leave sought should, as the rules require, be
> "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A] district court has discretion to deny a motion to

amend on grounds of futility where the proposed pleading would not survive a motion to

dismiss." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004),

*cert. denied*, 545 U.S. 1104 (2005).   Review for futility is practically "identical to review of a

Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *In re Interbank*

*Funding Corp. Secs. Litig.*, 629 F.3d 213, 215-16 (D.C. Cir. 2010) (quotation marks omitted).

Because leave to amend should be liberally granted, the party opposing amendment bears the

burden of coming forward with a colorable basis for denying leave to amend. *Abdullah v.*

*Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. (8)(a), "in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)).   Although "detailed factual allegations" are not necessary, a plaintiff must

furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause

of action." *Id.*   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting

*Twombly*, 550 U.S. at 557).   Rather, a complaint must contain sufficient factual allegations that,

if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 129 S. Ct. at 1949.  The plaintiff must provide more than just "a sheer possibility that a

defendant has acted unlawfully."  *Id.* at 1950.  When a complaint's well-pleaded facts do not

enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the

mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief.

*Id.*

      While "[a]ll pleadings shall be so construed as to do substantial justice," FED. R. CIV. P.

8(f), a document filed by a party proceeding *pro se* must be "liberally construed," *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation marks omitted).  For example, when a

*pro se* party has filed multiple submissions, the district court must generally consider those

filings together and as a whole.  *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir.

1999); *see also Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 101 n.2 (D.D.C. 2010).

Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers."  *Erickson*, 551 U.S. at 94 (quotation marks

omitted).  Nonetheless, "[a] pro se complaint, like any other, must present a claim upon which

relief can be granted."  *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).  Even with the

liberality afforded *pro se* complaints, the district court "need not accept inferences unsupported

by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations."

*Kaemmerling v. Lappin*, 553 F.3d 669, 667 (D.C. Cir. 2008) (quotation marks omitted).

## III.  DISCUSSION

      Through his third [33] Motion to Amend, Hajjar-Nejad seeks to assert additional claims

for breach of contract and for violations of Title VI, Title VII, Section 1981, the DCHRA, and his

constitutional rights under the First and Fourteenth Amendments.[6]  The Court addresses each

claim in turn.

Preliminarily, the Court notes that the parties dispute whether Hajjar-Nejad fully

complied with the meet-and-confer requirements of Local Civil Rule 7(m).  The parties seem to

forget that Local Civil Rule 7(m) is designed to prevent the Court from becoming embroiled in

unnecessary disputes, not to multiply them.  In this case, the Court finds that the record shows

that Hajjar-Nejad made a sufficient effort to consult with GW prior to the filing of the pending

Motion and that reaching the merits is appropriate and expeditious.  The Court reiterates,

however, that the parties are expected to meet and confer prior to the filing of any non-

dispositive motion and attempt to resolve or narrow the areas of dispute.

A.    *Hajjar-Nejad's Proposed Breach of Contract Claims*

Through his third [33] Motion to Amend, Hajjar-Nejad seeks to radically expand the

scope of his breach of contract claims in this case.  In particular, Hajjar-Nejad seeks leave to

allege that, in addition to the Offer of Acceptance that was the locus of his Second Amended

Complaint, a wide set of regulations, policies, procedures, and directives "are mutually binding

contracts in themselves."  Proposed Third Am. Compl. ¶ 95.  Hajjar-Nejad then proceeds to

provide what he characterizes as a "non-exhaustive list" of alleged breaches committed by GW

over the course of their three-year relationship.  *Id.* ¶ 96.

As was the case with his original Complaint, Hajjar-Nejad's allegations in this regard are

---

[6]  Unlike GW, the Court does not understand Hajjar-Nejad to be seeking leave to pursue a claim under the Family Educational Rights and Privacy Act, 31 U.S.C. § 1232.  *See* Pl.'s Reply at 4-5 (characterizing the proposed claims); *id.* at 18 ("GW mistakenly states that Plaintiff intends to bring a FERPA claim.").

prolix and often difficult to follow.  However, the fundamental problem with Hajjar-Nejad's

third Motion to Amend is that, by his own admission, it seeks to resurrect the very same claims

that were previously dismissed by this Court in its August 15, 2011 Memorandum Opinion and

Order.  *See* Proposed Third Am. Compl. ¶ 96; Pl.'s Mem. at 2-3.  In that Memorandum Opinion

and Order, the Court found that the Second Amended Complaint was "deficient in important

respects" insofar as it intended to assert breach of contract claims based on anything other than

the Offer of Acceptance.  *Hajjar-Nejad*, 2011 WL 3557312, at *8.  Most notably, in the Second

Amended Complaint, Hajjar-Nejad periodically referred to "regulations," "policies," "rules,"

"procedures," and "directives" that GW allegedly contravened during the course of the parties'

three-year relationship.  However, Hajjar-Nejad's allegations with respect to those "regulations"

and "policies" were conclusory and failed to provide sufficient factual content that would allow

the Court to conclude "(i) that these 'regulations' and 'policies' constituted a valid contract

between Hajjar-Nejad and GW; (ii) that they imposed specific obligations or duties on GW; and

(iii) that GW breached those specific obligations or duties."  *Id.*  Although Hajjar-Nejad had

identified five sets of "regulations" or "policies" that he contended GW violated, the

Court—citing the well-established principle that a party cannot amend its pleadings by its briefs

in opposition to a dispositive motion—found that Hajjar-Nejad's "belated identification of these

documents in his opposition papers [did not] cure the fundamental defects in his Second

Amended Complaint."  *Id.*  In short, "Hajjar-Nejad's Second Amended Complaint fail[ed] to

provide adequate notice of his breach of contract claim to the extent he intend[ed] to base it on an

unidentified universe of 'regulations,' 'policies,' 'rules,' 'procedures,' and 'directives.'"  *Id.*

Critically, the Court did not raise these defects in the Second Amended Complaint *sua*

*sponte*.  They were, rather, the principal focus of GW's second Motion to Dismiss, in which GW

unambiguously argued that Hajjar-Nejad's allegations of "unspecified violations" of regulations,

policies, procedures, and directives were insufficient to raise his breach of contract claims above

the speculative level.  *See* Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss Pl.'s Second

Am. Compl., ECF No. [21-1], at 3-4.  Hajjar-Nejad, who was then represented by legal counsel

of his own choosing, had a full and fair opportunity to respond to this argument.  *See* Pl.'s Reply

at 9 (conceding that "the third amended pleading is addressing exactly what GW strongly argued

[the Complaint] should [include] in its Motion to Dismiss the Second Amended Complaint").

But he did not do so.  Instead, he elected to frame his claim for breach of contract as resting on

"one, and only one, alleged breach—namely, that GW allegedly 'rescinded the contract to

provide educational services to [Hajjar-Nejad] through its precipitous and unlawful dismissal of

[him]."  *Hajjar-Nejad*, 2011 WL 3557312, at *8 (quoting Second Am. Compl. ¶ 59).  Indeed, in

opposing GW's second Motion to Dismiss, Hajjar Nejad "confirm[ed] this and expressly

disclaim[ed] that he [was] alleging that anything outside of the ultimate contract termination

constituted separate actionable breaches."  *Id.* (quotation marks and citation omitted).  He stated,

in no uncertain terms, that "[a]ll the matters of 'alleged conduct' cited in Defendant's Motion to

Dismiss . . . are not alleged to be in and of themselves separate actionable acts outside of the

ultimate contract termination" represented by his dismissal from the Medical School in July

2007.  Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss Second Am. Compl, ECF No. [22], at 12.

These representations were made to the Court by Hajjar-Nejad's chosen legal counsel, the Court

relied upon them, and Hajjar-Nejad is bound by them.

Despite the liberality of the standard for granting leave to amend, there is no doubt that

the district court has the discretion to deny a plaintiff leave to amend his or her complaint to add

claims already dismissed. *See Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144

(3d Cir. 2002) ("A [d]istrict [c]ourt has discretion to deny a plaintiff leave to amend where the

plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve

them.") (citation omitted), *cert. denied*, 537 U.S. 1113 (2003); *Henderson v. Frank*, 293 F.

App'x 410, 414 (7th Cir. 2008) (district court did not err in refusing to allow plaintiff to amend

complaint containing claims already dismissed).   When parties are put on notice of potential

deficiencies in their pleadings through a dispositive motion, they fail to "avail themselves of an

opportunity to rectify the deficiencies" "at their peril." *Ca. Pub. Emps.' Ret. Sys. v. Chubb

Corp.*, 394 F.3d 126, 165 (3d Cir. 2004); *Hester v. Int'l Union of Operating Eng'rs, AFL-CIO*,

941 F.2d 1574, 1578-79 (11th Cir. 1991) (upholding the district court's denial of leave to amend,

where district court found that the motion amounted to an attempt to "resurrect" a claim when

plaintiff had the opportunity to correct the deficiencies earlier).   In this case, not only did Hajjar-

Nejad fail to promptly rectify the deficiencies in his Second Amended Complaint that were

challenged in GW's second Motion to Dismiss, he expressly disclaimed any intention of

pursuing a breach of contract claim predicated on anything beyond the Offer of Acceptance. *Cf.

Wopsock v. Natchees*, 279 F. App'x 679, 689 (10th Cir. 2008) (district court was within its

discretion to deny leave to amend a second time where plaintiffs responded to the defendants'

motion for dismissal on the merits and waited to seek leave to amend until after the motions were

fully briefed and motion to amend sought to respond to the problems identified by the court in

resolving the motions).   Under these circumstances, the Court finds that granting leave to amend

is inappropriate.

18

Three additional considerations counsel in favor of denying Hajjar-Nejad leave to amend to add his additional breach of contract claims.  First, the Court is mindful of the timing of Hajjar-Nejad's third Motion to Amend, which was filed one year and five months after the commencement of this action on April 9, 2010, and after a full round of dispositive motions had already been fully briefed and submitted for the Court's consideration.  *See Wilderness Soc. v. Griles*, 824 F.2d 4, 19 (D.C. Cir. 1987) (upholding district court's denial of motion to amend that "occurred more than a year after the filing of [the] initial complaint and after dispositive motions had been filed and opposed.").  Second, the pending Motion to Amend, if granted, would represent Hajjar-Nejad's third amendment of the Complaint.  It is well-established that "[t]he district court's discretion to deny leave to amend is particularly broad where a plaintiff previously has amended the complaint," *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 690 (9th Cir. 2010), especially where, as here, the amendment relates to conduct of which the plaintiff should have been aware at the inception of the action.  Third, and finally, granting Hajjar-Nejad leave to amend his Complaint in the requested manner would radically expand the scope of his breach of contact claims to reach a broad universe of additional acts and alleged agreements that were previously uncovered.  *See Dave v. District of Columbia*, __ F. Supp. 2d __, 2011 WL 4014296, at *7 (D.D.C. Sept. 12, 2011) (noting that amendments that expand the allegations beyond the scope of the initial complaint and require additional discovery may unduly prejudice defendants).

Under these unique circumstances, whether considered together or independently, the Court elects to exercise its discretion in this case to deny Hajjar-Nejad leave to amend his Complaint a third time to add breach of contract claims that have already been dismissed by the

Court.  Accordingly, the Court shall DENY Hajjar-Nejad's third [33] Motion to Amend insofar

as he seeks to add breach of contract claims beyond his claim that GW breached the Offer of

Acceptance by dismissing him from the Medical School in July 2007.

     *B.*     *Hajjar-Nejad's Proposed DCHRA Claims*

Through his third [33] Motion to Amend, Hajjar-Nejad seeks to add claims that GW

discriminated and retaliated against him in violation of the DCHRA by dismissing him from the

Medical School in July 2007 and denying him the right to timely graduate.  *See* Proposed Third

Am. Compl. ¶¶ 84-93.  In opposition, GW argues that Hajjar-Nejad is precluded from bringing

suit on his DCHRA claims in federal court because they were submitted to the District of

Columbia Office of Human Rights (the "DCOHR"), the local investigating and prosecuting

entity in the District of Columbia,[7] and because the DCOHR issued a "probable cause"

determination.  *See* Def.'s Opp'n at 10-12.

GW's argument rests on the DCHRA's so-called "election of remedies" provision, which

provides, in relevant part, as follows:

> Any person claiming to be aggrieved by an unlawful discriminatory
> practice shall have a cause of action in any court of competent
> jurisdiction for damages and such other remedies as may be
> appropriate, unless such person has filed [an administrative]
> complaint hereunder; provided, that where the Office has dismissed
> such complaint on the grounds of administrative convenience, or
> where the complainant has withdrawn a complaint, such person shall
> maintain all rights to bring suit as if no complaint had been filed.  No
> person who maintains, in a court of competent jurisdiction, any action
> based upon an act which would be an unlawful discriminatory
> practice under this chapter may file the same complaint with the

---

[7]  The DCOHR should not be confused with the District of Columbia Human Rights
Commission (the "Commission"), which is the agency empowered to adjudicate complaints and
issue remedial orders.

Office.

D.C. CODE § 2-1403.16(a).  In this case, it is undisputed that Hajjar-Nejad submitted an

administrative complaint with the DCOHR raising charges mirroring the claims he seeks to

pursue against GW in this action.  The sequence of the events that transpired thereafter is

similarly undisputed.  By Hajjar-Nejad's own admission, after "an extensive period of

investigation," the DCOHR issued a "probable cause" determination on June 22, 2009, and that

determination was affirmed on January 12, 2010.[8]  Proposed Third Am. Compl. ¶¶ 11-12.  At

that moment in time, Hajjar-Nejad's administrative charge became ripe to be transferred and

heard before the Commission.  Nonetheless, it was not until June 15, 2011, long after the

DCOHR had rendered its "probable cause" determination, that Hajjar-Nejad sought to voluntarily

withdraw his administrative complaint from further consideration.  *See id.* ¶¶ 16-17 & Exs. 3-4.

The Commission, honoring what it saw as Hajjar-Nejad's clear and unambiguous desire, granted

the request and dismissed the administrative proceedings with prejudice on June 24, 2011.  *See*

*id.* Ex. 5.

In terms of the "election of remedies" bar imposed by the DCHRA, the relevant triggering

event is not, as Hajjar-Nejad seems to believe, the date on which the Commission issues a final

determination after a full evidentiary hearing.  Rather, under the DCHRA, "a plaintiff is required

to withdraw his [administrative complaint] prior to the DCOHR's determination of whether

probable cause exists." *Adams v. District of Columbia*, 793 F. Supp. 2d 392, 397 (D.D.C. 2011)

(citing *Anderson v. U.S. Safe Deposit Co.*, 552 A.2d 859, 861-62 (D.C. 1989)).  As Hajjar-Nejad

conceded at an earlier point in this case, once the DCOHR issued its "probable cause"

---

[8]  The DCOHR found there was "probable cause" for some claims, but not others.

21

determination, he was "bound to continue" his administrative complaint before the Commission.

Pl.'s Partial Opp'n to Def.'s Mot. to Dismiss First Am. Compl. and Voluntary Dismissal of All

Pending Civil Rights Claims, ECF No. [17], at 3.  By waiting until after the DCOHR issued its

"probable cause" determination to attempt to withdraw his complaint, Hajjar-Nejad simply

waited too long.  By the time he sought to withdraw, his election had already been made.  As a

result, he may not now relitigate his claims in this Court.  Accordingly, the Court shall DENY

Hajjar-Nejad's third [33] Motion to Amend insofar as he seeks to add claims that GW

discriminated and retaliated against him in violation of the DCHRA.

      *C.*      *Hajjar-Nejad's Proposed Title VII Claims*

Through his third [33] Motion to Amend, Hajjar-Nejad also seeks to add a claim arising

under Title VII in order to challenge GW's allegedly "retaliatory and discriminatory practices,"

including GW's alleged efforts to "block" Hajjar-Nejad's ability to take examinations and

otherwise prepare for a residency position in the future.  Proposed Third Am. Compl. ¶ 19.

However, Title VII prohibits discrimination and retaliation in the employment context and "an

individual's status as an employee is of crucial importance in determining whether [he or] she

can receive protection under Title VII." *Simms v. Ctr. for Corr. Health Studies*, 794 F. Supp. 2d

173, 188 (D.D.C. 2011).  In this case, although Hajjar-Nejad periodically alleges that GW's

alleged wrongful conduct affected his future employment prospects, he concedes that he was in

his "fourth and final year of medical school" when he was dismissed, Proposed Third Am.

Compl. ¶ 19, and he has failed to allege facts that would support the existence of an extant

employment relationship between him and GW.  *See* 42 U.S.C. § 2000e(f) ("The term

'employee' means an individual employed by an employer.").  Absent that factual predicate, he

cannot invoke the protections of Title VII. *See Lewis v. Russe*, 713 F. Supp. 1227, 1230 (N.D.

Ill. 1989) (medical student failed to allege plausible claim under Title VII); *McGuinness v. Univ.*

*of N.M. Sch. of Medicine*, 170 F.3d 974, 979 (10th Cir. 1998) (same, in connection with the

Americans with Disabilities Act), *cert. denied*, 526 U.S. 1051 (1999); *see also Pell v. Trustees of*

*Columbia Univ. in City of N.Y.*, No. 97 Civ. 0193 (SS), 1998 WL 19989, at *9 (S.D.N.Y. Jan. 21,

1998) (Sotomayor, J.) ("[B]ecause plaintiff was a student at Columbia University, not an

employee, there exists no employer-employee relationship."). Accordingly, Hajjar-Nejad's third

[33] Motion to Amend shall be DENIED insofar as it seeks to amend the Complaint to assert

claims of discrimination and retaliation arising under Title VII.

D.     *Hajjar-Nejad's Proposed Constitutional Claims*

Through his third [33] Motion to Amend, Hajjar-Nejad seeks to add a number of

constitutional claims that would collectively allege that GW's conduct over the course of the

parties' three-year relationship ran afoul of the protections afforded by the Establishment, Free

Exercise, and Freedom of Speech Clauses of the First Amendment and the Equal Protection

Clause of the Fourteenth Amendment. *See, e.g.*, Proposed Third Am. Compl. ¶ 3; Pl.'s Reply at

13-15. While the precise factual contours of these claims and their legal bases are never made

completely clear, it is nonetheless evident that allowing Hajjar-Nejad to amend his Complaint to

assert such claims would be futile. It is undisputed that GW is a private actor, *see* Proposed

Third Am. Compl. ¶ 8; Pl.'s Reply at 14, and Hajjar-Nejad has alleged no facts that would allow

him to bring such constitutional claims against GW. *See generally Williams v. Savage*, 569 F.

Supp. 2d 99, 111 (D.D.C. 2008) (articulating the "state actor" requirement in First Amendment

jurisprudence); *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (same, in connection with Fourteenth

23

Amendment jurisprudence); *see also Remy v. Howard Univ.*, 55 F. Supp. 2d 27, 29 (D.D.C. 1999) ("Instead of just providing funds, the government must exert control over an institution before a body becomes subject to governmental [constitutional] restrictions.").  Accordingly, Hajjar-Nejad's third [33] Motion to Amend shall be DENIED insofar as it seeks to amend the Complaint to assert constitutional claims arising under the First and Fourteenth Amendments.

>    E.    *Hajjar-Nejad's Proposed Title VI and Section 1981 Claims*

Finally, through his third [33] Motion to Amend, Hajjar-Nejad seeks to add claims alleging unlawful discrimination and retaliation under Title VI and Section 1981.  *See* Proposed Third Am. Compl. ¶¶ 84-104; Pl.'s Reply at 4-5.  In opposition, GW argues that leave to amend should be denied for one, and only one, reason—namely, that Hajjar-Nejad's proposed Title VI and Section 1981 claims are barred-in-part by the applicable statutes of limitations insofar as they challenge conduct predating April 9, 2007—three years prior to the commencement of this action.[9]  *See* Def.'s Opp'n at 12-13.  GW identifies a total of eleven of Hajjar-Nejad's allegations that fall before this temporal threshold, in the period extending from August 23, 2006, through February 2007.  *See id.*

In this Circuit, the statute of limitations for Title VI claims is three years.  *See, e.g.*, *Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 65, 71 (D.D.C. 2011); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 237-38 (D.D.C. 2007).  Therefore, GW is correct that Hajjar-Nejad cannot recover for alleged violations of Title VI pre-dating April 9, 2007.  In particular, Hajjar-Nejad cannot recover under Title VI for the eleven allegations identified by GW in its opposition.

---

[9]  As a result, the Court has no occasion to determine whether Hajjar-Nejad has otherwise stated plausible claims for relief under Title VI or Section 1981.

Those include Hajjar-Nejad's allegations that (1) Scott violated GW's confidentiality policy on or about August 23, 2006; (2) Schroth directed a professor to give Hajjar-Nejad a below passing grade on or about September 22, 2006; (3) GW generated "false and contrived" student evaluations in or about September and October 2006; (4) Schroth directed Hajjar-Nejad to discontinue his ongoing medical research on or about October 23, 2006; (5) Schroth indicated that he would not permit Hajjar-Nejad to transfer to another school on or about October 23, 2006; (6) Schroth and Scott removed Hajjar-Nejad from GW's honors program on or about October 23, 2006; (7) Scott stated that Hajjar-Nejad was angering him on or about October 23, 2006; (8) Scott stated that he did not want Hajjar-Nejad to pursue surgery as a profession on or about October 23, 2006; (9) GW included false allegations in Hajjar-Nejad's performance evaluations in late 2006 and early 2007; (10) GW decided to initiate a review of Hajjar-Nejad's professional comportment in December 2006; and (11) GW decided to form a committee to evaluate Hajjar-Nejad's progress in or about February 2007. *See* Def.'s Opp'n at 12-13 (citing Proposed Third Am. Compl. ¶¶ 36, 39-40, 43-48, 51-53). Despite this, GW does not contend—let alone provide a colorable argument—that Hajjar-Nejad should be denied leave to amend his Complaint to allege violations of Title VI occurring on or after April 9, 2007, including his dismissal from the Medical School in July 2007.

Meanwhile, Hajjar-Nejad's claims arising under Section 1981 present a somewhat more complicated question. To the extent such claims implicate the sort of post-contract-formation conduct that was not actionable until Congress enacted the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, they are subject to a four-year statute of limitations; to the extent they implicate the act of contract formation, a three-year statute of limitations applies. *See Graves v.*

*District of Columbia*, 777 F. Supp. 2d 109, 115-116 (D.D.C. 2011) (providing an extended analysis of the reason for the disparate treatment). In this case, Hajjar-Nejad does not challenge the act of contract formation—that is, the circumstances surrounding the Offer of Acceptance itself. Rather, he claims that GW ran afoul of Section 1981 by denying him "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). As a result, the claim is subject to a four-year limitations period, meaning that Hajjar-Nejad may recover for acts of retaliation or discrimination occurring on or after April 9, 2006. Since not one of the eleven allegations challenged by GW in opposition to Hajjar-Nejad's third Motion to Amend pre-date April 9, 2006, GW has failed to supply a colorable basis for denying Hajjar-Nejad leave to amend his Complaint to add his Section 1981 claims, as is its burden. *See Abdullah*, 530 F. Supp. at 115. The Court reiterates that, given the limited basis for GW's opposition, the Court has no occasion to determine whether Hajjar-Nejad has otherwise stated plausible claims for relief under Title VI or Section 1981.

Accordingly, the Court shall GRANT-IN-PART and DENY-IN-PART Hajjar-Nejad's third [33] Motion to Amend insofar as he seeks to add claims of discrimination and retaliation arising under Title VI and Section 1981. Specifically, the Motion to Amend shall be DENIED insofar as Hajjar-Nejad seeks to recover under Title VI based on allegations of discrimination or retaliation predating April 9, 2007; the Motion shall otherwise be GRANTED.

### F.     Practical Considerations

Ordinarily, the Court would require a party granted partial leave to amend to prepare and submit a revised pleading in conformity with the Court's opinion. In this particular case, however, the Court believes that such a route is more likely to expand the avenues of dispute and

engender satellite litigation instead of simplifying the further conduct of this litigation.

Accordingly, the Court attaches to this Memorandum Opinion and Order a redacted version of

Hajjar-Nejad's proposed Third Amended Complaint, which omits, to the extent practicable,

references to those claims that are no longer at issue.  Nonetheless, the Court emphasizes that the

redacted version of the proposed Third Amended Complaint is accepted only insofar as it is

consistent with this Memorandum Opinion and Order and the terms of the Court's August 15,

2011 Memorandum Opinion and Order.

## IV.  CONCLUSION AND ORDER

The Court has considered the remaining arguments tendered by the parties and has

concluded that they are either without merit or need not be reached in light of the reasons for the

Court's decision.  Accordingly, it is, this 4th day of January, 2012, hereby

**ORDERED** that Hajjar-Nejad's third [33] Motion to Amend is **GRANTED-IN-PART**

and **DENIED-IN-PART**.  Specifically, the Motion is **DENIED** insofar as Hajjar-Nejad seeks

leave to amend the Complaint to add (a) breach of contract claims beyond his claim that GW

breached the Offer of Acceptance by dismissing him from the Medical School in July 2007; (b)

claims that GW discriminated and retaliated against him in violation of the DCHRA; (c) claims

of discrimination and retaliation arising under Title VII; (d) constitutional claims arising under

the First and Fourteenth Amendments; and (e) claims of discrimination and retaliation arising

under Title VI based on acts pre-dating April 9, 2007.  The Motion is **GRANTED** insofar as

Hajjar-Nejad seeks leave to add those claims identified in his Proposed Third Amended

Complaint that allege (a) discrimination or retaliation under Title VI based on acts occurring on

or after April 9, 2007; and (b) claims of discrimination or retaliation under Section 1981 based

on acts occurring on or after April 9, 2006.

It is **FURTHER ORDERED** that the Clerk of the Court shall accept Hajjar-Nejad's attached [43-1] Third Amended Complaint, which has been redacted by the Court, and its accompanying exhibits, for filing.  Going forward, the Third Amended Complaint shall be considered viable only insofar as it is compatible with the terms of this Memorandum Opinion and Order and the Court's August 15, 2011 Memorandum Opinion and Order.

It is **FURTHER ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum Opinion and Order to Hajjar-Nejad at his address of record.

      /s/            
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
