UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMAD JAVAD HAJJAR-NEJAD, : : : Plaintiff, : : v. : : GEORGE WASHINGTON UNIVERSITY, : : : Defendant. : : | Civil Action No. 10-626 (CKK/JMF) |

MEMORANDUM OPINION

Pending before me are three outstanding discovery issues in the above captioned case: 1) Plaintiff's Response to Show Cause Order [#133]; 2) The George Washington University's Motion to Dismiss, or In the Alternative, for an Order Directing that the Answers to Deposition Questions that Plaintiff has Refused to Answer be Taken as Established, and for an Order Compelling Plaintiff to Supplement his Initial Disclosures, and Directing Him to Pay the Reasonable Expenses, including Attorneys' Fees, that GW Incurs in Connection with this Motion [#124]; and 3) The George Washington University's Motion to Lift Seal on Plaintiff's Deposition Transcript [#134]. I will address each of these in turn.

### I. Response to Order to Show Cause

#### 1. Background

On May 9, 2012, I issued a Memorandum Opinion [#98] and Order [#97] resolving numerous discovery disputes, including a joint motion to compel and a motion for costs/sanctions filed by GWU alleging that plaintiff failed to appear for a properly noticed deposition, and when that deposition was rescheduled, plaintiff left before the 7 hours of time

allotted under the Federal Rules of Civil Procedure had elapsed. [#98] at 1-2.  I found that both the failure to appear for the February 27, 2012, deposition, and plaintiff's departure 1.5 hours early from his re-scheduled March 20, 2012, deposition, constituted discovery violations, but ordered the plaintiff to show cause why he should not be required to pay the expenses associated with those violations and the defendant's corresponding motions, [#62] and [#74], which brought the discovery violations to the court's attention. Id. at 1-2, 8.

Plaintiff chose to appeal my order to the District Court judge, Judge Colleen Kollar-Kotelly, Response to Order of the Court [#101], who affirmed my rulings, save for my decision regarding a dispute about initial disclosures, Order [#117].  Because the plaintiff never fully addressed the issues I requested in my order to show cause, I re-issued the request, via minute order, on November 26, 2012. Minute Order of 11/26/12.  Plaintiff responded, [#133], and the defendant responded in turn, The George Washington University's Response to Hajjar-Nejad's Response to Show Cause Order [#135].

## 2. Legal Standard for Sanctions for Failure to Appear at a Deposition

Under Federal Rule of Civil Procedure 37(d), "the court . . . may, on motion, order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d).  A party will not be excused from attending a properly noticed deposition, even if she objects to the deposition, unless "the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2).

If a discovery violation has occurred, the Court has leeway in deciding which sanctions listed under Rule 37(b)(2)(A) are appropriate, but at a minimum, it "*must* require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure,

*unless the failure was substantially justified or other circumstances make an award of expenses unjust.*" Fed. R. Civ. P. 37(d)(3).

### 3. Plaintiff's Failure to Appear at his February 27, 2012 Deposition

In response to my renewed order to show cause, plaintiff primarily argues that 1) he wasn't properly noticed for that deposition, [#135] at 2, 2) he didn't agree to be deposed on that date and he wanted to depose *his* witnesses first, id. at 3; and 3) the defendant was so difficult to work with that no deposition schedule was agreed upon at all prior to this Court's intervention, id. at 4.

These justifications, which consume the vast majority of plaintiff's response, are old arguments previously rejected by Judge Kollar-Kotelly, myself, or both. [#133] at 2. Judge Kollar-Kotelly previously criticized plaintiff for taking such an approach in his filings. [#117] at 2 ("in boldface contravention of this Court's prior instructions . . . the vast majority of the arguments tendered by Plaintiff in Plaintiff's Objections simply reargue facts and theories made in prior submissions upon which the Court has already ruled."). Therefore, even allowing for plaintiff's *pro se* status, many of the arguments advanced by plaintiff in his response to the show cause order are impermissible, given the previous rulings in this case.

For example, Judge Kollar-Kotelly previously found that the plaintiff was *not* excused from failing to appear on February 27 because he disagreed with the deposition order. [#117] at 3. In opposition to plaintiff's proper notice argument, defendant attached the notice of deposition and certification of mailing by first class mail on January 27, 2012, exactly one month before the deposition was scheduled to take place, indicating that the deposition was, indeed, properly noticed. [#135-1]. For these reasons, most of plaintiff's arguments must fail.

3

However, plaintiff makes one final argument in his show cause briefings that directs against ordering sanctions.  On February 22, 2012, five days before his scheduled deposition, plaintiff filed a self-styled Request for Relief Notice [#57], wherein he raised the various scheduling arguments stated above and asked for "the Honorable Court's help and just intervention." Id. at 6.

Plaintiff now claims that this was a motion for a protective order, [#140] at 11, which is important because "failure to appear [at a properly noticed deposition] 'is not excused on the ground that the discovery sought was objectionable, *unless the party failing to act has a pending motion for a protective order*.'" Covad Commc'ns Co. v. Revonet, Inc., 267 F.R.D. 14, 24 (D.D.C. 2010) (citing Fed. R. Civ. P. 37(d)(2)) (emphasis added).  That motion was referred to me on February 23, 2012, Order Referring Motion to Magistrate Judge [#56], and was not resolved until I issued a new discovery order on March 7, 2012. [#65].

Taking plaintiff's *pro se* status into account, his self-styled motion requesting relief from the scheduled deposition should be construed as a motion for a protective order.  Since this is so, plaintiff did not violate Rule 37(d) by failing to appear, and sanctions are inappropriate.  For that reason, defendant's request for sanctions regarding plaintiff's failure to appear for his February 27, 2012 deposition will be denied.

### 4.  Leaving the March 20, 2012 Deposition 1.5 Hours Early

The second issue for which plaintiff was required to show cause is his leaving his re-scheduled deposition on March 20, 2012, when the defendant still had 1.5 hours of deposition time left under the Federal Rules.[1]

---

[1] This was originally raised in The George Washington University's Consolidated Motion for a Protective Order and to Quash Plaintiff's Subpoena Duces Tecum to Jeffrey Akman, M.D., to Compel Plaintiff to Provide Further Deposition Testimony, Sanctioning Plaintiff for Leaving His

Following plaintiff's failure to appear at his February 27, 2012 deposition, this Court intervened and set a deposition schedule for all witnesses going forward. [#65]. Plaintiff was rescheduled for March 20, 2012, the first day allotted to the defendant's witnesses. The videographer was the official time keeper during the deposition, and at the point that plaintiff decided to leave, the videographer indicated, on the record, that 1.5 hours remained in defendant's allotted time. [#135-2] at 5. I previously held that "in the absence of any reason to believe that the videographer was mistaken, GWU correctly points out that it will be entitled to consume the seven hours contemplated by the Rule." [#98] at 2. Accordingly, I denied Plaintiff's Request for Relief [#73] and ordered that plaintiff sit for another 1.5 hours of deposition, which took place on November 8, 2012. [#98] at 2.

In response to my recent show cause order, plaintiff once again rehashes arguments I previously rejected, but here, he is not saved by the pendency of a motion for a protective order. First, he argues that there was a dispute about the time remaining in the deposition, because the court reporter and the videographer's time keeping differed by 30 minutes. [#133] at 8. He also argues that he left the deposition when he did because 1) it was getting late, 2) there were numerous breaks during the day, many of which he found unnecessary, 3) the defendant *should have* been able to conduct the full 7 hour deposition during the time the plaintiff was at defense counsel's firm, and 4) he wanted to get home to prepare for the two depositions he was conducting the next day. [#133] at 8-11; [#140] at 13-14. As all of these arguments were previously rejected by this Court and Judge Kollar-Kotelly, [#98] and [#117], plaintiff has failed to meet his burden to show that his behavior was substantially justified and that sanctions are not warranted.

---

Deposition Before It Was Over and Opposition to Plaintiff's Request for Relief Notice [#74-10] at 4-5.

Under Rule 37(d) and the court's inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process," Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991), I believe sanctions, in the form of ordering plaintiff to pay the reasonable expenses associated with his leaving his March 20, 2012 deposition early, are appropriate.[2]  Accordingly, I will order plaintiff to pay the costs associated with the rescheduled 1.5 hours of deposition time and the attorneys' fees incurred in preparing defendant's motion for sanctions, [#74], and response to plaintiff's show cause response, [#135].[3]

## II.   GWU's Motion to Dismiss, or in the Alternative, for Sanctions Against Plaintiff

The second matter before me is defendant's motion to dismiss/motion for sanctions, [#124], which raises what it considers to be additional discovery violations by the plaintiff that merit some sort relief.  These violations include: 1) plaintiff's failure to answer defendant's question during his March 20, 2012, and November 8, 2012, depositions regarding whether plaintiff called Dean Schroth after receiving Dean Schroth's e-mail instructing him to do so, [#124] at 2-6; and 2) plaintiff's identification of Dr. Timothy Shope in his initial disclosures as someone who may have discoverable information in this case, but failure to describe the nature

---

[2] Contrary to plaintiff's assertions, there is nothing in Rule 37(d) that indicates that a total failure to comply with all aspects of discovery is necessary before sanctions can be imposed for failing to attend a properly noticed deposition or leaving a deposition early.  Plaintiff appears to conflate Rule 37(d) as it applies to interrogatories, which are not at issue here, with Rule 37(d) as it applies to *depositions*.  Under the Rule, failure to appear at a properly noticed deposition *requires*, at the very least, an award of attorneys' fees associated with the failure to appear, by the party who failed to appear, unless the failure was substantially justified. Fed. R. Civ. P. 37(d)(3).

[3] Plaintiff, throughout his response and his reply to GW's response, also makes numerous off-hand requests for sanctions against GW for various infractions of the discovery rules.  See, e.g., Plaintiff's Reply to GW's Response [ECF 135] to Show Cause Order [#140] at 10-11.  Those claims were not properly before the Court, given my very limited minute order regarding plaintiff's need to show cause, and they shall not be addressed here.

of that information, id. at 7-8.  The defendant also requests attorneys' fees and costs associated with preparing the instant motion. Id. at 8-9.

Neither of the actions described by the defendant merits sanctions against the plaintiff, for the reasons I will address below.

### 1. Plaintiff's Failure to Answer Deposition Questions

With regards to defendant's claim that plaintiff failed to answer a question posed to plaintiff during his deposition, defendant is mistaken in its interpretation of the transcript.  On March 20, 2012, plaintiff was asked a series of questions regarding the e-mail sent to plaintiff by Dean Schroth on October 20, 2006, requesting that plaintiff call Dean Schroth immediately. 3/20/12 Hajjar-Nejad Dep. Tr., [#126-2] at 3-8.  When asked directly, for the first time, if plaintiff called Dean Schroth on Friday, October 26, plaintiff responded: "I don't recall calling him." Id. at 4.  Then, counsel for defendant asked the question again, albeit with a different phrasing: "And you failed to return his call after now two electronic mail messages; is that correct?", id. at 5-6, to which plaintiff responded: "yes, and I explained for you the reason why, because it was an exam week . . . .", id. at 6.  Finally, when defendant asked a third time whether plaintiff called Dean Schroth on his cell phone as requested on Friday, October 26, or "any other day during the weekend," plaintiff responded: "from what I can remember, the first time that I went and saw him was on Monday, October 23, 2006. . . ." Id. at 8.

Contrary to defendant's assertion that these responses were attempts to "evade" GW's inquiry, [#124] at 4-5, it appears that plaintiff did, in fact, answer the questions posed to him; he did not remember calling Dean Schroth at any point over the weekend in response to the Dean's e-mail, and he did not speak to the Dean until Monday morning.

When GW attempted to raise this line of questioning again during the November 8, 2012 deposition, plaintiff refused to answer, stating that he had answered those questions in his prior deposition and that he wanted to see how they were answered previously before responding. 11/8/12 Hajjar-Nejad Dep. Tr., [#126-1] at 3-6.  Perhaps plaintiff could have answered the question again, or perhaps he was trying to avoid perjuring himself.  Either way, his behavior in this regard does not merit any sanctions, let alone the severe sanction of dismissal with prejudice requested by the defendant.

### 2. Deficiency in Plaintiff's Initial Disclosures

Regarding plaintiff's failure to provide, via initial disclosures, the type of information Dr. Shope may have that would be discoverable to defendant, this point is now moot.  In his opposition brief, plaintiff states why Dr. Shope may be a relevant witness: he supervised plaintiff during rotations at the WHC, and plaintiff "interacted with him frequently." Plaintiff's Opposition to GW's Motion [ECF 124][#136] at 21.

Although defendant is correct in objecting that "Hajjar-Nejad may not amend his initial disclosures through an opposition brief," Reply [#138] at 6, to compel plaintiff to issue a formal supplementation of his initial disclosures would be, at this point, purely academic.  The defendant now has the information it was missing, and this should be sufficient.

For these reasons, I will deny the relief requested in defendant's motion to dismiss, or in the alternative, for sanctions, [#124], and instead order it accepted that the plaintiff did not call Dean Schroth between October 20 and 22, 2006, and that Dr. Shope may have discoverable information because of his relationship to plaintiff as a supervisor during plaintiff's rotations.

### III.     Defendant's Motion to Unseal Plaintiff's Deposition Transcript

After the close of discovery, the defendant filed a motion to unseal the plaintiff's deposition transcripts from March 20, 2012, and November 8, 2012. The George Washington University's Motion to Lift Seal on Plaintiff's Deposition Transcript [#134] at 1-2.  The defendant's brief motion rests almost exclusively on my previous statement, on the record during plaintiff's March 20, 2012 deposition, that I would temporarily put the transcript of the deposition under seal and that "[plaintiff] could move me . . . or Judge Kollar-Kotelly not to permit the transcript to be disclosed." 3/20/12 Hajjar-Nejad Dep. Tr. [#134-1] at 3-4.

Defendant argues that, because plaintiff never filed a motion to keep the deposition transcript sealed, the seal should now be lifted. [#134] at 2.  In the alternative, defendant argues that plaintiff cannot "demonstrate why maintaining the seal would not undermine the 'presumption of openness' in the civil arena." Id. (citations omitted).  To that end, defendant asserts that the seal should be lifted 1) because the parties should be litigating this case "in the open, consistent with federal policy," and 2) to "enable GW to avoid the additional time and expense of redacting its future filings." GW's Reply to Hajjar-Nejad's Opposition to GW's Motion to Lift Seal on Hajjar-Nejad's Deposition Transcript [#141] at 4.  Defendant also correctly points out that plaintiff himself placed portions of his deposition transcript "in the public domain" when he filed his opposition to defendant's motion for sanctions, thus negating any legitimate argument by plaintiff that the seal must remain for his own protection. Id. at 3.

Plaintiff, for his part, does not address why a motion was never filed to maintain the seal. Plaintiff's Opposition to GW's Motion [ECF 134] to Lift Seal on Plaintiff's Deposition Transcript [#137] at 3.  Instead, he 1) raises a previously rejected claim for tortious interference, id. at 2, rejected in Judge Kollar-Kotelly's November 13, 2012 Discovery Order [#120]; and 2)

9

appears to argue that unsealing the deposition would allow GW to continue interfering with plaintiff's ability to secure a residency program. [#137] at 3. Plaintiff also accuses defendant of filing its motion to "deter Plaintiff from being able to attain a residency" and "as a stalling technique" to delay the previously-scheduled status hearing. Id. at 7. Finally, plaintiff argues that "the public has never had access to Plaintiff's deposition transcript and there is no need for it to have access now," [#137] at 5 (internal quotations omitted), and the seal should remain because his deposition is "not in evidence." [4] Id.

Plaintiff's arguments are either misplaced or inaccurate. First, plaintiff need not worry that his deposition will suddenly be available, *in toto*, for public consumption. This is because the Local Rules explicitly prohibit the filing of such materials until they are used in a proceeding or ordered by the Court. LCvR 5.2(a). Plaintiff is correct in his statement that "pretrial depositions and interrogatories are not public components of a civil trial." [#137] at 4 (citing Seattle Times v. Rhinehart, 467 U.S. 20, 33 (1984)); accord In re Reporters Comm. for Freedom of the Press, 773 F.2d 1325, 1338 (D.C. Cir. 1985) ("It can thus hardly be said that there was a tradition, or is even now a general practice, of public access to pretrial depositions."). However, defendant is not seeking to file the full transcript on the record, nor would it be permitted to do so even if that were its request. Defendant is merely hoping to use portions of that transcript in

---

[4] Notably, neither plaintiff nor defendant discuss the legal standard in this Circuit for unsealing court proceedings and filings, save for the defendant's brief argument regarding the presumption of openness to the public in civil cases. [#134] at 2. It is of no importance to the Court whether or not the transcript is sealed; rather, the important inquiry is whether plaintiff would be prejudiced if the seal were to be lifted. See Johnson v. Greater Se. Cmty. Hosp., 951 F.2d 1268, 1277 n.14 (D.C. Cir. 1991); United States v. Hubbard, 650 F.2d 293, 316-17 (D.C. Cir. 1980) (holding that a six-factor balancing test should determine whether documents should be unsealed); Fudali v. Pivotal Corp., 623 F. Supp. 2d 25, 28 (D.D.C. 2009). Whether or not the public should have access to judicial records is "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of a particular case." Nixon v. Warner Commc'ns, 435 U.S. 589, 598 (1978) (cited in Hubbard).

its future motions without having to undergo the expense of filing a redacted public version, and a second un-redacted version under seal. [#141] at 4. Second, portions of plaintiff's deposition are, in fact, "in evidence" before the Court, insomuch as those excerpts form the basis of various arguments made to the Court in discovery-related motions filed by both the defendant and the plaintiff himself.

Given that the plaintiff failed to file a motion to keep his transcript sealed, failed to put forth a solid argument for doing so, and himself used un-redacted portions of that transcript in his pleadings, it is appropriate to lift the seal on the deposition transcript for the limited purpose of allowing defendant to file future motions in un-redacted form. My direction that the transcript be used "only for the purposes of the prosecution and defense of this lawsuit" remains. [#134-1] at 4. Accordingly, I will grant defendant's motion to lift the seal on plaintiff's deposition transcript.

## IV. Conclusion

For the reasons stated above, I hereby: 1) award defendant reasonable costs incurred by plaintiff's early departure from the March 20, 2012 deposition, the motion filed to address that violation, [#74], and the response to plaintiff's show cause response, [#135]; 2) deny with prejudice defendant's motion to dismiss, or in the alternative, for sanctions, [#124]; and 3) grant defendant's motion to lift the seal on plaintiff's deposition transcript, [#134].

An Order will accompany this opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE